**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 26-1886                                                      Caption [use short title]

**Motion for:** stay pending appeal

Coe v. Blanche

Set forth below precise, complete statement of relief sought:

The government requests a stay pending appeal of the district court's preliminary injunction prohibiting the government from obtaining, or NYU Defendants from providing, certain medical and billing records to the government.

**MOVING PARTY:** U.S. Department of Justice; Todd Blanche      **OPPOSING PARTY:** Plaintiffs // NYU Defendants

☐ Plaintiff          ☒ Defendant

☒ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** Sarah Welch          **OPPOSING ATTORNEY:** Bobby Hodgson // Zachary Cunha

[name of attorney, with firm, address, phone number and e-mail]

U.S. Department of Justice

New York Civil Liberties Union // Nixon Peabody

950 Pennsylvania Ave NW., Washington, DC 20530

125 Broad St., 19th Floor, New York, NY 10004 // 1 Citizens Pl., Ste. 500, Providence RI 02903

sarah.e.welch@usdoj.gov; 202-514-3180

rhodgson@nyclu.org; 212-607-3317 // zcunha@nixonpeabody.com; 401-454-1025

Court- Judge/ Agency appealed from: Southern District of New York (Judge Failla)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes   ☐ No (explain): 

Opposing counsel's position on motion:
☐ Unopposed  ☒ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☐ No   ☒ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☒ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☒ No

Requested return date and explanation of emergency: The order at issue indefinitely prohibits the government from seeking or receiving a category of relevant evidence in order to enforce federal law. The government requests a ruling by August 17, 2026.

Is the oral argument on motion requested?   ☐ Yes  ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes  ☒ No  If yes, enter date: 

**Signature of Moving Attorney:**

SARAH WELCH  Digitally signed by SARAH WELCH Date: 2026.07.23 10:14:46 -04'00'  **Date:** 7/23/2026      Service : ☒ Electronic   ☐ Other [Attach proof of service]

**Form T-1080 (**rev. 10-23)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

| | |
|---|---|
| Carter Coe, et al., | |
| Plaintiffs-Appellees, | |
| v. | Docket No. 26-1886 |
| Todd Blanche, et al., | |
| Defendants-Appellants. | |

**Defendants-Appellants' Motion for a Stay
Pending Appeal**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................... 1

BACKGROUND ....................................................................................3

ARGUMENT...........................................................................................6

I.      The Injunction Is Indefensible...........................................................6

        A.    Plaintiffs are using the wrong procedural vehicle in the wrong
              court................................................................................... 7

        B.    The district court grossly misapplied substantive due process
              principles. ..............................................................................15

        C.    The Fourth Amendment does not prohibit subpoenas for
              medical records. ...................................................................20

II.     The Remaining Considerations Favor the Government. ...................23

CONCLUSION.......................................................................................26

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abbott v. Perez,*
585 U.S. 579 (2018)............................................................................15

*Am. Acad. of Pediatrics v. Uthmeier,*
2026 WL 1971202 (7th Cir. July 8, 2026)..........................................11, 24

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015)........................................................................ 13

*Article 13 LLC v. Ponce De Leon Fed. Bank,*
175 F.4th 397 (2d Cir. 2026) .................................................................17

*Branzburg v. Hayes,*
408 U.S. 665 (1972) ............................................................................8

*Carpenter v. United States,*
585 U.S. 296 (2018) .................................................................20, 22, 23

*Chatrie v. United States,*
609 U.S. ___, 2026 WL 1855568 (June 29, 2026)............................. 22, 23

*Chicago Headline Club v. Noem,*
168 F.4th 1033 (7th Cir. 2026).............................................................. 24

*Church of Scientology of Cal. v. United States,*
506 U.S. 9 (1992) ............................................................................. 26

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ............................................................................ 14

*Cnty. of Sacramento v. Lewis,*
523 U.S. 833 (1998) ........................................................................... 18

*Cobbledick v. United States,*
309 U.S. 323 (1940) ....................................................................... 8, 25

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022)............................................................................17

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.,*
  441 U.S. 211 (1979) ........................................................... 10

*Edmonson v. Leesville Concrete Co.,*
  500 U.S. 614 (1991) ..........................................................20

*Hancock v. Cnty. of Rensselaer,*
  882 F.3d 58 (2d Cir. 2018)............................................17, 18

*In re Grand Jury Proceedings,*
  801 F.2d 1164 (9th Cir. 1986)..............................................15

*In re Sealed Case,*
  794 F.2d 749 (D.C. Cir. 1986)............................................. 25

*In re Subpoena Duces Tecum,*
  228 F.3d 341 (4th Cir. 2000) ..........................................19, 25

*Levine v. United States,*
  362 U.S. 610 (1960)........................................................... 7

*Maryland v. King,*
  567 U.S. 1301 (2012) ........................................................ 23

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
  145 S. Ct. 2658 (2025)...................................................... 13

*New York Times Co. v. Gonzales,*
  382 F. Supp. 2d 457 (S.D.N.Y. 2005)....................................... 12

*New York Times Co. v. Gonzales,*
  459 F.3d 160 (2d Cir. 2006)............................................ 11, 12

*Nken v. Holder,*
  556 U.S. 418 (2009) ...........................................................6

*Samia v. United States,*
  599 U.S. 635 (2023) ......................................................... 25

*Smith v. Maryland,*
  442 U.S. 735 (1979) ...................................................... 21, 22

iii

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ............................................................................ 14

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ..................................................................... 12, 24

*United States v. Beaufils,*
  160 F.4th 1147 (11th Cir. 2025) ........................................................ 19

*United States v. Calandra,*
  414 U.S. 338 (1974) ........................................................................... 16

*United States v. Dionisio,*
  410 U.S. 1 (1973) ............................................................................... 16

*United States v. Felder,*
  993 F.3d 57 (2d Cir. 2021) ................................................................ 21

*United States v. Harry,*
  130 F.4th 342 (2d Cir. 2025) ............................................................ 22

*United States v. Hayes,*
  794 F.2d 1348 (9th Cir. 1986) .......................................................... 19

*United States v. McGovern,*
  60 F.2d 880 (2d Cir. 1932) ............................................................... 16

*United States v. R. Enters., Inc.,*
  498 U.S. 292 (1991) ................................................................ 9, 10, 16

*United States v. Williams,*
  504 U.S. 36 (1992) .............................................................................. 9

*World Pro. Ass'n for Transgender Health v. FTC,*
  No. 26-cv-532 (D.D.C. July 10, 2026) .............................................. 11

*Z.A v. Lucile Salter Packard Children's Hosp. at Stanford,*
  No. 5:26-cv-4998 (N.D. Cal. June 6, 2026) ..................................... 20

## Statutes

18 U.S.C. § 3282(a) ............................................................................... 25

18 U.S.C. § 3486 ....................................................................4, 15

18 U.S.C. § 1035...........................................................................3

18 U.S.C. § 1347 ..........................................................................3

21 U.S.C. § 352(f)........................................................................3

**Rules**

Fed. R. Civ. P. 45(d)(3)..............................................................9

Fed. R. Crim. P. 6 .......................................................................7

Fed. R. Crim. P. 6(e)(2) ..............................................................8

Fed. R. Crim. P. 6(e)(3) ............................................................ 10

Fed. R. Crim. P. 17..................................................................7, 20

Fed. R. Crim. P. 17(a) ................................................................8

Fed. R. Crim. P. 17(c)(2)............................................................8

**Regulations**

21 C.F.R. § 208.128 ....................................................................3

45 C.F.R. § 164.520 ..................................................................22

## INTRODUCTION

Plaintiffs are several minor patients of NYU Langone Hospitals and their parents. They assert that a grand jury in the Northern District of Texas issued a subpoena to NYU Langone seeking communications with pharmaceutical companies regarding cross-sex hormones and puberty blockers, internal communications regarding billing practices for certain treatments, medical and billing records, and other related documents.

Consistent with grand jury secrecy rules, the government cannot disclose the existence or nature of any grand jury subpoenas, but the government publicly disclosed last year that it is investigating matters including whether healthcare providers have committed healthcare billing fraud or made unlawful false statements, and whether manufacturers and distributors of puberty blocker and cross-sex hormones violated the Food, Drug, and Cosmetic Act (FDCA) by distributing drugs intending that they be used off-label. Pursuant to that investigation, two hospitals have thus far agreed to pay substantial penalties to resolve potential liability for allegations that they submitted false bills to secure insurance coverage for sex-rejecting procedures on minors.

Rather than moving to quash or otherwise seeking relief in the Northern District of Texas, plaintiffs asked a district court in the Southern

District of New York to enjoin the government from seeking or obtaining records in response to any present or future subpoenas. The district court also extended its relief by certifying a class of patients who received gender-related medical interventions from New York City hospitals as minors.

That order is an unprecedented arrogation of authority that this Court should promptly correct. Just as the Northern District of Texas cannot superintend grand juries in the Southern District of New York, so the Southern District of New York cannot superintend grand juries in the Northern District of Texas. The basic principles governing grand jury proceedings dictate that if plaintiffs seek to challenge a subpoena, they must seek to quash before the issuing court. By the same token, a district court cannot invade Executive Branch prerogatives by telling the Executive Branch which offenses or entities it may investigate. Orders like the one entered here have no historical precedent, would create law-free zones where private actors may violate the law with impunity, and irreparably harm the government's and the public's interests in enforcing laws protecting the public and the public fisc. Even beyond those threshold considerations, on the merits, the district court's novel expansion of substantive due process, curtailing of the third-party doctrine, and unreasoned injunction against private defendants fare no better.

2

The Court should stay the district court's unprecedently erroneous and invasive order. The government requests a ruling on this motion by August 17, 2026, in order to permit it to seek further relief if necessary and authorized.

## BACKGROUND

**A.** For over a year, the Department of Justice has been investigating potential violations of federal law in connection with the provision of puberty blockers and cross-sex hormones to minors with gender dysphoria. These drugs are approved by the Food and Drug Administration for some uses, but FDA has not determined that any of these drugs are safe or effective for treating gender dysphoria or approved them for such use.

Although federal law does not prohibit doctors from prescribing drugs for off-label purposes, various federal statutes prohibit defrauding or obtaining money by false pretenses from programs like Medicare or Medicaid or from private health care benefit programs. *See, e.g.*, 18 U.S.C. §§ 1035, 1347. And the FDCA extensively regulates pharmaceutical companies. For example, drug manufacturers and distributors can violate the FDCA by shipping drugs in interstate commerce intending that they be

3

used off-label, with that intent frequently evidenced by promoting the drugs for off-label uses. 21 U.S.C. § 352(f); 21 C.F.R. § 208.128.

In connection with this investigation, the government has issued various administrative subpoenas under 18 U.S.C. § 3486 (a provision of the Health Insurance Portability and Accountability Act), including one since-withdrawn administrative subpoena to NYU Langone Hospitals. The Department has thus far announced resolutions of liability with two hospitals for allegations that they submitted false bills to obtain insurance coverage for gender-related medical interventions for minors.[1]

**B.** Plaintiffs are patients and former patients who received gender-related treatments at NYU Langone as minors. ECF 1 ¶¶ 14-20. According to plaintiffs and NYU Defendants' public filings, a grand jury subpoena issued under the seal of the Northern District of Texas on May 6, 2026, commanded NYU Langone Hospitals to produce documents before a federal grand jury in Fort Worth. ECF 1 at 49. According to plaintiffs, the subpoena required production by June 10, 2026, and sought several categories of records concerning gender-related care provided to minors between January 2020 and May 2026. *See id.* at 49-60. Pursuant to

---

[1] Press Release, U.S. Dep't of Justice (June 5, 2026), https://perma.cc/7MPN-4AQK; Press Release, U.S. Dep't of Justice (May 15, 2026), https://perma.cc/S4NQ-X6FN.

Criminal Rule 6(e), the government is not permitted to confirm or deny the existence of grand jury subpoenas.

On June 2, plaintiffs sued in the Southern District of New York, alleging that disclosure of their records would violate their Fourth and Fifth Amendment rights and state law. ECF 1. Plaintiffs sought a temporary restraining order and certification of a class of "individuals who received any medical treatment for gender dysphoria" at "a healthcare institution located in New York City" while they were minors, and a subclass of those individuals treated "at NYU Langone Hospitals or any other NYU entity." ECF 17 at 4; *see* ECF 8.

The district court granted the motions in an oral ruling, entering a temporary restraining order against both NYU Defendants and the government, in favor of a provisionally certified class and subclass. ECF 65; *See* ECF 77 ("Tr."). The district court concluded that plaintiffs would likely succeed on Fourth and Fifth Amendment claims against the government. Tr. 14-27. The court did not assess plaintiffs' likelihood of success against NYU Defendants.

The parties agreed to treat the temporary restraining order briefing as briefing on a preliminary injunction, and the district court adopted its oral

5

reasoning as the basis for a preliminary injunction in favor of the same provisionally certified class and subclass. ECF 71.

Specifically, the preliminary injunction bars DOJ Defendants from "[s]eeking, receiving, using, retaining, or disseminating" plaintiffs' or class members "identifying or sensitive health information" via existing or future "substantially similar administrative or grand jury subpoenas as part of the U.S. Department of Justice's claimed investigations into healthcare offenses related to gender-affirming medical care." *Id.* at 4-5. NYU Defendants are enjoined from "[d]isclosing or producing" any such information in response to any such process.

The government appealed and moved for a stay pending appeal. ECF 79, 81. The district court denied the government's stay motion on July 17, 2026. ECF 83.

## ARGUMENT

The government is entitled to a stay because it is likely to succeed on the merits, it will suffer irreparable harm absent a stay, and the balance of the equities and public interest favor a stay. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009).

6

## I.    The Injunction Is Indefensible.

The government will prevail on appeal because the unprecedented injunction exceeds the district court's equitable authority and is erroneous on its own terms.

### A.    Plaintiffs are using the wrong procedural vehicle in the wrong court.

The Department is likely to succeed in showing that the district court lacked equitable authority to interfere with any grand jury process issued under the authority of a federal court in Texas. Neither plaintiffs nor the district court pointed to *any* prior case in which a district court has purported to interfere with a grand jury investigation arising from another district in this manner. That is no surprise: even aside from the absence of any historical tradition allowing such relief, the Federal Rules of Criminal Procedure establish a comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas. *See* Fed. R. Crim. P. 17; *see also id.* R. 6. Plaintiffs may not bypass that framework through collateral civil litigation, nor do district courts possess freestanding equitable authority to enjoin a sister court's grand jury process.

1.    A federal grand jury "is an arm of the court" in which it sits. *Levine v. United States*, 362 U.S. 610, 617 (1960). "The Constitution itself makes the grand jury a part of the judicial process," and it issues process

7

"under general instructions from the court to which it is attached and to which, from time to time, it reports its findings." *Id.* (quoting *Cobbledick v. United States*, 309 U.S. 323, 327 (1940)). Consistent with that principle, the Federal Rules of Criminal Procedure channel challenges to grand jury process to the issuing court. A grand jury subpoena must "state the court's name" and "include the seal of the court." Fed. R. Crim. P. 17(a). And "[o]n motion made promptly, *the court* may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.* R. 17(c)(2) (emphasis added). In context, "the court" with exclusive authority to quash or modify grand jury process is the court named on the subpoena—the same court that supervises the grand jury and exercises authority over its proceedings, including deciding any requests for disclosure under Rule 6(e). *See id.* R. 6(e)(2)(E), (F) ("A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened.").

That allocation of authority reflects long-settled practice. The Supreme Court has repeatedly explained that "[g]rand juries are subject to judicial control and subpoenas to motions to quash." *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). Although a "grand jury subpoena issued through normal channels" is presumed reasonable in light of the grand jury's broad

investigative authority, *United States v. R. Enters., Inc.*, 498 U.S. 292, 298-301 (1991), the supervising "court will refuse to lend its assistance when the compulsion the grand jury seeks would override rights accorded by the Constitution," *United States v. Williams*, 504 U.S. 36, 48 (1992). And, as explained, Rule 17 requires that such objections be presented to the court responsible for the investigation—not to any district in which the subpoena recipient, the documents, or persons mentioned in those documents happen to be located.

**2.** The district court's contrary rule is untenable. Permitting a separate federal district court to entertain collateral challenges to a subpoena issued by a grand jury sitting in another district would improperly intrude upon the issuing court's supervisory authority, create an intolerable risk of inconsistent rulings among federal courts, and disrupt the orderly administration of federal criminal investigations. Because Rule 17(e) authorizes nationwide service, permitting collateral challenges in any district in which the subpoena recipient, the documents, or persons mentioned in those documents happen to be located would permit different courts—without access to the same information or responsibility for the grand jury's investigation—to issue conflicting rulings about the same grand jury investigation. Rule 17 avoids that disorder by channeling

9

disputes to the one court responsible for the investigation. The contrast with Civil Rule 45 confirms the point: whereas Civil Rule 45 expressly assigns certain subpoena disputes to "the court for the district where compliance is required," Fed. R. Civ. P. 45(d)(3), Criminal Rule 17 contains no comparable provision authorizing collateral review in the district where documents are located.

The historic tradition of grand jury secrecy, now enshrined in Rule 6(e), makes that channeling especially important. Rule 6(e) generally prohibits government attorneys from disclosing matters occurring before the grand jury without authorization from the supervising court. *See* Fed. R. Crim. P. 6(e)(3)(E)(i), (F); *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 225 (1979). A non-supervising court lacks the information needed to evaluate a subpoena's relevance, the government's need, or delay's consequences. It is effectively asked to restrain an investigation whose relevant details and scope neither the plaintiffs nor the court know— and which the government cannot freely reveal. By contrast, the supervising court does not face that disability; it may evaluate objections against the full context and authorize appropriate disclosures to the objecting party. *See R. Enters.*, 498 U.S. at 302.

10

Even if Rule 6(e) were no bar, "[r]equiring the Government to explain in too much detail the particular reasons underlying a subpoena" in a collateral proceeding "threatens to compromise 'the indispensable secrecy of grand jury proceedings.'" *Id.* at 299 (citation omitted). Such a regime would be incompatible with a functioning grand jury system. It is unsurprising that plaintiffs have identified *no* injunctions barring compliance with an out-of-district grand jury subpoena or investigation, prior to this month. Indeed, other courts have continued to properly reject efforts to collaterally attack and intrude on lawful investigations. *See Am. Acad. of Pediatrics v. Uthmeier*, 2026 WL 1971202 (7th Cir. July 8, 2026) (en banc) (staying injunction against state enforcement action regarding groups that advocate for gender-related medical interventions for minors); *World Pro. Ass'n for Transgender Health v. FTC*, No. 26-cv-532, ECF No. 58 (D.D.C. July 10, 2026) (denying anti-suit injunction against enforcement action).

*New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), does not help plaintiffs. There, this Court considered a newspaper's request for a declaratory judgment that its phone records in the possession of third parties should be shielded from any grand jury subpoenas in connection with a specific incident based on common-law or First Amendment

11

privilege. *Id.* at 162. The district court had entered a declaratory judgment for the newspaper, emphasizing that the declaratory judgment the newspaper sought was *not* "tantamount to a permanent injunction." *New York Times Co. v. Gonzales*, 382 F. Supp. 2d 457, 480 (S.D.N.Y. 2005). Given that posture, the only threshold issues the Court considered were specific to declaratory judgments. *Times*, 459 F.3d at 166-67.

Nothing in *Times* endorses an *injunction* against a grand jury subpoena that plaintiffs here allege has *already* issued from another district court. *See id.* at 167 (emphasizing that it was "unknown whether subpoenas have been issued" and that "a motion to quash is not available if the subpoena has not been issued"). And as to the equitable remedy of an injunction, there is no equitable history or tradition recognizing freestanding constitutional causes of action to collaterally attack grand jury process. Again, prior to this month, no other federal court appears to have indulged a litigant's request for a coercive injunction aimed at a coordinate federal court's grand jury process. Federal equitable remedies must remain within "the bounds of a federal court's equitable authority under the Judiciary Act," and relief lacking a "historical pedigree"—like the district court's injunction—falls outside those bounds. *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). A general grant of federal-question jurisdiction

12

likewise does not answer whether plaintiffs possess a cause of action or whether the requested remedy falls within the court's equitable authority. A court's power to enjoin unconstitutional conduct by federal officers is "subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Rule 17 "express[ly] provi[des]," *id.* at 328, that challenges to extant grand jury process take the form of a motion to quash presented to the supervising court. And the unique features of grand jury investigations (including secrecy, centralized supervision, and nationwide service of process) make collateral adjudication "judicially unadministrable." *Id.*

**4.** The district court reasoned that because plaintiffs challenged a broader "serial effort" to obtain their information, a Rule 17 motion would not provide complete relief against hypothetical future process. Tr. 17-18. That does not solve plaintiffs' Rule 17 problem, and it instead introduces new problems.

A plaintiff cannot end-run Rule 17 by packaging an impermissible request for relief from grand jury process together with a request for relief from other previously issued or hypothetical future process. If an order forbidding Action A is foreclosed, that limit cannot be evaded simply by entering an order forbidding "Action A or Action B." *See, e.g., Nat'l Insts. of*

13

*Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660-61 (2025) (staying injunction in part). Whether or not the district court's order *also* interfered with other investigative steps, it undoubtedly sought to functionally quash a grand jury subpoena. That was, after all, the goal: The district court hurried to rule when it did because it found "an imminent risk that [plaintiffs'] identifying and sensitive health information will be disclosed today *because of the subpoena*." Tr. 18 (emphasis added).

Further, plaintiffs lack standing to challenge hypothetical future subpoenas because they provide no evidence that the government will imminently seek to obtain their information through future subpoenas. To establish standing, a plaintiff must allege a "threatened injury" that is "*certainly impending*," and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Yet when evaluating standing, the district court found only one imminent injury: "the [grand jury] subpoena." Tr. 18. Absent standing to challenge anything other than the asserted grand jury subpoena, there is no Article III dispute to justify the balance of the injunction. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing … for each form of relief that they seek.").

14

Even if plaintiffs somehow had standing to challenge all future process, such a remedy is, if anything, even more unprecedented than an order targeting a single alleged grand jury subpoena. And plaintiffs cannot possibly show on the merits that any and all future attempts by the government to access their patient records would violate the law, particularly where hypothetical future investigations may be subject to their own frameworks for motions to quash. *E.g.*, 18 U.S.C. § 3486.

In the end, plaintiffs sought and obtained an order that functions just like quashal of a sister federal court's grand jury process. *Cf. Abbott v. Perez*, 585 U.S. 579, 595 (2018) (functional assessment of remedy to prevent judicial "manipulation"). The government is likely to show that the district court exceeded its authority.

### B. The district court grossly misapplied substantive due process principles.

Even aside from this threshold defect, plaintiffs' Fifth Amendment theory depends on a second unprecedented proposition: that a right to informational privacy permits third parties to control evidence sought by an otherwise lawful grand jury subpoena.

1. Plaintiffs assert a constitutional right to prevent a federal grand jury from obtaining medical records held by third parties. But the Supreme Court has held that a witness "of course" has "no right of privacy before the

grand jury," *United States v. Calandra*, 414 U.S. 338, 353 (1974), and this Court said an assertion of a "right to privacy in [one's] own affairs" to avoid grand jury testimony was an "ill-advised notion," *United States v. McGovern*, 60 F.2d 880, 889 (2d Cir. 1932); *see also In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) ("There is no general right to privacy before the grand jury."). Thus, absent a "recognized privilege," "every man owes his testimony," and a grand jury is entitled even to "responses [that] might prove embarrassing or result in an unwelcome disclosure of ... personal affairs." *Calandra*, 414 U.S. at 353.

That approach also follows from the nature of grand jury proceedings. Grand jury proceedings must not be "saddle[d]" with "minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). Subjecting grand jury subpoenas to a "multifactor" substantive due process balancing test would impermissibly "invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena." *R. Enters.*, 498 U.S. at 298. And such an approach—particularly in a non-supervising court—would improperly "compromise the indispensable secrecy of grand jury proceedings" by

16

"[r]equiring the government to explain in too much detail the particular reasons underlying a subpoena." *Id.* at 299.

The district court held that plaintiffs established "a constitutional privacy right" protecting their "medical information" and "transgender status" from disclosure to the government. Tr. 19. Although this Court has recognized a constitutional interest in avoiding certain unauthorized disclosures of highly personal information, *see, e.g.*, *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58 (2d Cir. 2018), no court appears to have applied informational-privacy principles to limit compliance with a grand jury subpoena. And as the Supreme Court has made clear, courts may not recognize new applications of substantive due process by describing the asserted liberty interest "at a high level of generality," such as a generalized interest in "privacy," "autonomy," or bodily integrity. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 254-57 (2022). Rather, the asserted interest must be carefully defined and shown to be "deeply rooted in the Nation's history and traditions." *Id.* at 250, 256; *see, e.g.*, *Article 13 LLC v. Ponce De Leon Fed. Bank*, 175 F.4th 397, 407 (2d Cir. 2026) (inquiring whether plaintiff had a substantive due process "right to wait until after the limitations period expired to challenge the validity of an earlier foreclosure action"). The district court's generalized appeal to a too-general privacy

17

interest as grounding a substantive due process claim against a grand jury subpoena cannot be squared with these principles.

In sum, to the extent a grand jury's receipt of evidence implicates constitutionally protected privacy interests, such "a breach of privacy takes a form courts have previously approved." *Hancock*, 882 F.3d at 66.

**2.** Even if a substantive-due-process right existed, the district court erred in finding conscience-shocking misconduct. The Supreme Court "demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). The district court ignored that rule. It concededly lacked information regarding "the precise nature of the government's interest and how any legitimate government interest would be served by" a request for patient medical and billing records, Tr. 22, given Criminal Rule 6(e)'s limitations on the government's ability to reveal the existence or nature of grand jury proceedings such as evidence or investigative theories. The court nonetheless concluded the government would lose by attempting two ways around the "exact analysis" requirement, both misconceived.

*First*, the district court asserted that it could not "conceive of a crime that would require the breadth of disclosure sought in the subpoena," Tr. 22, and that the government therefore lacked a legitimate interest. That

18

was plainly incorrect, even if it could substitute for an "exact analysis": the government frequently uses patient medical and billing records—in large quantities—to investigate, charge, and prove healthcare-related crimes. *See, e.g.*, *United States v. Beaufils*, 160 F.4th 1147, 1154-57, 1161, 1163-66 (11th Cir. 2025) (hundreds of medical records, to prosecute healthcare fraud, false statements related to health care matters, and aggravated identity theft); *In re Subpoena Duces Tecum*, 228 F.3d 341, 345, 350 (4th Cir. 2000) ("more than 15,000 patient files," to investigate "any of 13 federal statutory offenses"); *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986) ("over 10,000 patient files"). Indeed, such records are often the central piece of evidence in healthcare-related prosecutions.

*Second*, the district court treated plaintiffs' privacy interests as insurmountable, concluding that even if the government "articulate[d] a cognizable and legitimate interest in the information it seeks, it would not overcome plaintiffs' strong privacy interest." Tr. 22. But the alleged sensitivity of evidence cannot itself place that evidence beyond the reach of otherwise lawful criminal process. The district court identified no other context in which non-privileged information is nonetheless so private it would outweigh any legitimate investigative interest. And that cannot be right. Federal prosecutors constantly obtain and handle intensely private

19

information, such as when investigating crimes involving sexual violence or child exploitation. Any deeply-rooted constitutional privacy rights in the grand jury context would thus have long since emerged, but none have. Instead, longstanding non-constitutional rules have accounted for these interests, underscoring that such information is regularly used in grand jury proceedings. For example, "when the grand jury seeks the production of personal or confidential information, grand jury secrecy affords substantial protection for the [individual's] privacy and dignity interests." Fed. R. Crim. P. 17 advisory committee's note to 2008 amendment.

To the extent the injunction against NYU Defendants rests on that reasoning, it fails for the same reasons. It also fails for the additional, elementary reason that NYU Defendants have never been shown to be federal government actors capable of violating the Fifth Amendment. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991); Order, *Z.A. v. Lucile Salter Packard Children's Hosp. at Stanford*, No. 5:26-cv-4998, ECF No. 40 at 9-15 (N.D. Cal. June 6, 2026).

### C. The Fourth Amendment does not prohibit subpoenas for medical records.

The district court also concluded that the Fourth Amendment's warrant requirement applies to governmental requests for medical records, reasoning that medical records are akin, for constitutional purposes, to the

cell-site location records at issue in *Carpenter v. United States*, 585 U.S. 296 (2018). The government is likely to succeed on that ground too, because the third-party doctrine applies to the records at issue.

The third-party doctrine "deems a person to have 'no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *United States v. Felder*, 993 F.3d 57, 75 (2d Cir. 2021) (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). The doctrine's classic application is to documents containing personal information about an identifiable individual that are held by a third-party business. For example, in *Smith*, a defendant lacked a reasonable expectation of privacy in the telephone numbers that he dialed because "[t]elephone users … typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes." 442 U.S. at 743.

Precisely the same is true of patients' medical records (which record observations, assessments, diagnostic information, and treatments by medical professionals) and billing records (which record payer information, codes representing services and diagnoses, charges, and the like). Patients "typically know that they must convey" information to doctors and insurers,

that this information is "record[ed]," and that their providers keep and disclose these records "for a variety of legitimate business purposes." *Smith*, 442 U.S. at 743. Indeed, healthcare institutions are required to tell patients that they will use and disclose their information to others, and NYU Langone's lengthy privacy disclosure warns of many kinds of disclosure. *See* ECF 46-1, 46-2; 45 C.F.R. § 164.520.

*Carpenter*, and, more recently, *Chatrie v. United States*, 609 U.S. \_\_, 2026 WL 1855568 (June 29, 2026), are not to the contrary. Both cases concerned the distinct, cell-phone-age phenomenon of retrospective collection of extraordinarily detailed location information. Unlike those cases grappling with the Fourth Amendment implications of "modern technology enhanc[ing] law enforcement's traditional surveillance capabilities," *United States v. Harry*, 130 F.4th 342, 349 (2d Cir. 2025), medical and billing records are by no means a new phenomenon. And unlike the automatically generated location records at issue in *Carpenter* and *Chatrie* that are not "truly shared" by the user, *Chatrie*, 2026 WL 1855568, at *15 (quoting *Carpenter*, 585 U.S. at 315), medical and billing records fall squarely within *Smith* and *Miller*, as documents generated individually by specific, known interactions with a third-party business and

22

with the patient's knowledge that they are being created and will be disclosed to others.

The district court was also wrong to conclude that medical and billing records are as revealing as the records at issue in *Carpenter* and *Chatrie*. In those cases, records were generated continuously and automatically, at a rate of more than 100 records per day in *Carpenter* and more than 700 in *Chatrie*. *Chatrie*, 2026 WL 1855568, at *11. Such detailed records could permit "near perfect surveillance" of any individual. *Id.* (quoting *Carpenter*, 585 U.S. at 311-12). Medical records, and certainly billing records that merely reflect requests for reimbursement to yet another business, cannot begin to approach that picture.

On this claim too, the district court conducted no separate analysis as to NYU Defendants. That aspect of the injunction falls together with the portion running against the government, and additionally fails because the district court never concluded that NYU Defendants were governmental actors for constitutional purposes.

## II.    The Remaining Considerations Favor the Government.

The preliminary injunction irreparably harms the government. The government suffers irreparable injury when it is forestalled from enforcing its own laws. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in

23

chambers); *see Uthmeier*, 2026 WL 1971202 (staying preliminary injunction barring enforcement action). The injunction irreparably harms the United States by directly and indefinitely prohibiting the government from obtaining patient records through *any* grand jury process to investigate *any* crime, no matter how strong the evidence of wrongdoing, how necessary the information, or whether the subject of investigation is a hospital, doctor, pharmaceutical company, or otherwise.

That harm is compounded in this context. By "prevent[ing] the Government from enforcing its policies against nonparties," *CASA*, 606 U.S. at 859, the injunction transgresses the separation of powers by "effectively establish[ing] the district court as the supervisor" of the investigation, *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th Cir. 2026). And because the district court lacks equitable authority to enjoin grand jury process allegedly issued by a sister federal court, "the Government is likely to suffer irreparable harm from the [court's] entry of [an] injunction[] that likely exceed[s] the [court's] authority." *CASA*, 606 U.S. at 860.

These harms cannot be repaired by a favorable later judgment. In this context, indefinite delay concretely and irreversibly harms the government's and the public's "compelling interest in finding, convicting,

24

and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted); *accord, e.g.*, *In re Sealed Case*, 794 F.2d 749, 751 n.3 (D.C. Cir. 1986) (per curiam) (recognizing "weighty public interest in the orderly functioning of grand juries and the judicial process"). In the meantime, personnel depart, records are lost or destroyed, statutes of limitations run, and witnesses' memories fade. *See, e.g.*, 18 U.S.C. § 3282(a) (default five-year statute of limitations for federal crimes). It is thus "no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment." *Cobbledick*, 309 U.S. at 327. Indefinite delay threatens to foreclose investigative avenues—or prosecution altogether— before the government can complete its inquiry.

On the other side of the balance, plaintiffs' asserted privacy interests do not outweigh those interests. For the reasons explained already, to the extent plaintiffs retain privacy interests in records held by hospitals in this context, the government's interest in finding, convicting, and punishing those who violate the law far "outweighs the privacy rights of those whose [medical] records" are sought via grand jury subpoena. *In re Subpoena*, 228 F.3d at 351. Any records disclosed to the government in the interim could be returned if plaintiffs were to ultimately prevail on appeal. *See*

*Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13-15 (1992). No principle of law or equity supports an injunction that indefinitely prohibits the Department from seeking or receiving an entire category of relevant evidence.

## CONCLUSION

The Court should grant a stay pending appeal.

Dated: Washington, D.C.
July 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

JORDAN CAMPBELL
*Deputy Assistant Attorney General*

By: <u>/s/ *Sarah Welch*</u>

SARAH WELCH
*Senior Counsel to the Assistant*
*Attorney General*
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-3180
Email: sarah.e.welch@usdoj.gov

JOHN R. BAILEY
BRANTLEY T. MAYERS
*Counsel to the Assistant Attorney*
*General*

STEVEN R. SCOTT
EUGENE O'HALLORAN
LUKE A. MILLER
*Trial Attorneys*
*U.S. Department of Justice*
*Civil Division*
*Attorneys for Federal Defendants*

27

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 5,191 words.