# No. 26-1886

## In the United States Court of Appeals for the Second Circuit

CARTER COE, by and through his parent and next friend Caroline Coe; REED ROE, by and through his parent and next friend Riley Roe; NICOLE NOE, by and through her parent and next friend Norman Noe; KARL KOE; and JAY DOE, each on behalf of themselves and all similarly situated,

*Plaintiffs-Appellees*,

v.

TODD BLANCHE, Acting United States Attorney General, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellants*.

On Appeal from the United States District Court for the Southern District of New York, No. 1:26-cv-04641-KPF, Hon. Katherine Polk Failla

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY PENDING APPEAL**

| | |
|---|---|
| Chase B. Strangio | Omar Gonzalez-Pagan |
| Shana Knizhnik | Karen L. Loewy |
| **American Civil Liberties Union Foundation** | **Lambda Legal Defense and Education Fund, Inc.** |
| 125 Broad Street, Floor 18 | 120 Wall Street, 19th Floor |
| New York, New York 10004 | New York, NY 10005 |
| (212) 549-2500 | (212) 809-8585 |
| cstrangio@aclu.org | ogonzalez-pagan@lambdalegal.org |
| sknizhnik@aclu.org | kloewy@lambdalegal.org |

*Additional counsel on inside cover.*

*Counsel for Plaintiffs-Appellees*

Robert Hodgson
Gabriella Larios
Anya Weinstock
**New York Civil Liberties Union Foundation**
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3300

Adrienne Spiegel
**American Civil Liberties Union Foundation**
425 California Street, Suite 700
San Francisco, California 94104
(415) 343-0779

Nora Huppert
**Lambda Legal Defense and Education Fund, Inc.**
3656 N. Halsted St.
Chicago, Illinois 60613
(312) 605-3233

A.D. Sean Lewis*
**Lambda Legal Defense and Education Fund, Inc.**
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
(213) 382-7600

\* *Application for admission forthcoming.*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................I

TABLE OF AUTHORITIES .............................................................................II

INTRODUCTION ..............................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT .......................................................................................................5

    I.    Defendants Are Not Likely to Succeed on Appeal. ...................................5

        A.    Plaintiffs Have Standing. ...................................................................5

        B.    The District Court Properly Exercised Jurisdiction. ...........................6

        C.    Plaintiffs Are Likely to Succeed on Their Fifth Amendment Informational Privacy Claim. .....................................11

        D.    Plaintiffs Are Likely to Succeed on Their Fourth Amendment Claim.................................................................17

    II.    Movants Will Not Be Irreparably Harmed While Their Appeal Is Pending.................................................................19

    III.    The Equities and the Public Interest Favor Denying a Stay.....................21

CONCLUSION.................................................................................................22

CERTIFICATE OF COMPLIANCE................................................................25

# TABLE OF AUTHORITIES

## Cases

*A.H. by & through Hester v. French*,
985 F.3d 165 (2d Cir. 2021) ...............................................................22

*Agudath Israel of America v. Cuomo*,
983 F.3d 620 (2d Cir. 2020) ...............................................................22

*American Academy of Pediatrics v. Uthmeier*,
180 F.4th 1022 (7th Cir. 2026) ...........................................................11

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320, 327 (2015) .....................................................................7

*Carpenter v. United States*
585 U.S. 296 (2018).................................................................... 17, 18

*Chatrie v. United States*,
No. 25-112, 609 U.S. ----, 2026 WL 1855568 (U.S. June 29, 2026)..... 17, 18

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992).............................................................................22

*Doe v. Harris*,
696 F.2d 109 (D.C. Cir. 1982)..............................................................6

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) ................................................................8

*Ferguson v. City of Charleston*,
532 U.S. 67 (2001)...........................................................................18

*Hancock v. County of Rensselaer*,
882 F.3d 58 (2d Cir. 2018) ................................................................12

*Hassoun v. Searls*,
976 F.3d 121 (2d Cir. 2020). ..............................................................23

*In re Children's National Hospital*,
2026 WL 160792 (D. Md. Jan. 21, 2026). .............................................3

ii

*In re Copley Press, Inc.*,
 518 F.3d 1022 (9th Cir. 2008) ........................................................21

*In re Grand Jury Subpoena Served Upon Doe*,
 781 F.2d 238 (2d Cir. 1986) .........................................................13

*In re Horowitz*,
 482 F.2d 72 (2d Cir. 1973) ...........................................................17

*In re Subpoena Duces Tecum*,
 228 F.3d 341 (4th Cir. 2000) ........................................................15

*In re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*,
 2026 WL 1392565 (D.R.I. May 14, 2026) ....................................10

*In re: Subpoena No. 25-1431-014*,
 810 F.Supp.3d 555 (E.D. Pa. 2025) ..............................................14

*Labrador v. Poe by & through Poe*,
 144 S. Ct. 921 (2024) ...................................................................19

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .......................................................................5

*Murthy v. Missouri*,
 144 S. Ct. 7 (2023) .......................................................................20

*New York Times Co. v. Gonzales*,
 382 F.Supp.2d 457 (S.D.N.Y. 2005) ..................................... 7, 8, 10

*New York Times Co. v. Gonzales*,
 459 F.3d 160 (2d Cir. 2006) ................................................ 6, 8, 13

*New York v. United States Department of Homeland Security*,
 969 F.3d 42 (2d Cir. 2020) ...........................................................21

*Nken v. Holder*,
 556 U.S. 418 (2009)................................................... 2, 5, 20, 21

*O'Connor v. Pierson*,
 426 F.3d 187 (2d Cir. 2005) .........................................................12

*Powell v. Schriver*,
　　175 F.3d 107 (2d Cir. 1999). ...........................................................................12

*Schuette v. BAMN*,
　　572 U.S. 291 (2014)..........................................................................................21

*Sheehan v. Purolator Courier Corp.*,
　　676 F.2d 877 (2d Cir. 1981). .............................................................................7

*Tucson Woman's Clinic v. Eden*,
　　379 F.3d 531 (9th Cir. 2004) ...........................................................................13

*United States v. Beaufils*,
　　160 F.4th 1147 (11th Cir. 2025)......................................................................15

*United States v. Cessa*,
　　856 F.3d 370 (5th Cir. 2017) ..........................................................................10

*United States v. Dionisio*,
　　410 U.S. 1 (1973).............................................................................................13

*United States v. Hayes*,
　　794 F.2d 1348 (9th Cir. 1986) ........................................................................15

*United States v. Westinghouse Electric Corp.*,
　　638 F.2d 570 (3d Cir. 1980) ...........................................................................13

*World Professional Association for Transgender Health v. FTC*,
　　2026 WL 1999008 (D.D.C. July 10, 2026) .....................................................11

*Z.A. v. Blanche*,
　　2026 WL 1907181 (N.D. Cal. July 2, 2026) ........................................ *passim*

## Rules

Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. ...............................................6

Federal Rule of Criminal Procedure 17 ....................................................................7

Federal Rule of Criminal Procedure 6(e)................................................................14

## Other Authorities

Defendants' Brief, *New York Times Co. v. Gonzales*, 2005 WL 1266200
    (S.D.N.Y. Jan. 3, 2005) ..............................................................8, 9

Defendants' Brief, *Z.A. v. Lucile Salter Packard Child.'s Hosp.*,
    No. 26-cv-04998 (N.D. Cal. Jun 03, 2026) (ECF 31) ..................................11

Justice Manual § 9-11.121 .......................................................................10

Order Denying Stay, *Z.A. v. Blanche*,
    No. 26-cv-04998 (N.D. Cal. July 31, 2026) (ECF 108) ..............................20

Settlement Agreement, *In re Children's Hosp. of L.A. Subpoena*,
    No. 25-CV-11183 (C.D. Cal. Jan. 22, 2026) (ECF No. 25-1) ......................19

The White House, *Supreme Court Bolsters President Trump's Push to
    Eliminate Transgender Insanity* (Jun. 30, 2026),
    https://perma.cc/484A-4MDN.......................................................................1

v

**INTRODUCTION**

This case arises from the federal government's serial demands for Plaintiffs' and Class Members' deeply private information. For over a year, the Department of Justice (DOJ) has sought identifying and sensitive health information of transgender youth who obtained medical treatment at New York City hospitals, including NYU Langone and Mount Sinai. DOJ's demands are just one of the levers the Administration is using to effectuate its goal to "end" gender-affirming medical care, as part of its "push" to "eliminate transgender insanity."[1]

On July 6, 2026, the District Court preliminarily enjoined DOJ from "[s]eeking, receiving, using, retaining, or disseminating any identifying or sensitive health information of Plaintiffs and members of the Class" during the pendency of this case, having found it necessary "to maintain the *status quo* and prevent irreparable harm." Dkt. 71 at 3-4. In doing so, the District Court did not quash any administrative or grand jury subpoena, nor did it stop DOJ from conducting investigations of purported healthcare offenses. Rather, the District Court granted limited relief preserving the *status quo* and safeguarding the constitutionally protected identifying and sensitive health information of Plaintiffs.

---

[1] The White House, *Supreme Court Bolsters President Trump's Push to Eliminate Transgender Insanity* (Jun. 30, 2026), https://perma.cc/484A-4MDN.

Now, after having shown no urgent need for this information for over a year, DOJ asks this Court for the "extraordinary" remedy of a stay pending appeal of the preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009). But the "stay" DOJ seeks would not only "upend the status quo and lead to the very irreparable harm that the preliminary injunction was designed to prevent," Dkt. 83 at 1-2; it would effectively constitute final judgment in DOJ's favor. As the District Court noted, there is no un-ringing of the proverbial bell: if the preliminary injunction is stayed, healthcare institutions in New York City—including NYU and Mount Sinai—will be forced to produce Plaintiffs' deeply private information to a government that has "carried out a systematic campaign to attack and dehumanize transgender people." Dkt. 77 (hereafter "Tr.") 9:20-23.

This Court should deny DOJ's request and maintain the *status quo*.

## BACKGROUND

As part of its sweeping campaign targeting transgender people, the Administration has deployed the full weight of the federal government to effectuate its goal to "end" medical treatment for transgender minors across the country, including in jurisdictions like New York where such treatment is legal. Compl. ¶¶ 41-71. The President has deemed it "the policy of the United States that it will not fund, sponsor, promote, assist, or support" gender-affirming medical care, declaring it to be a "stain on our Nation's history." *Id.* ¶¶ 41-42. Then-Attorney

General Bondi issued a memorandum describing gender-affirming medical care as a "radical ideological agenda" and an attempt to "maim and steriliz[e] children." *Id.* ¶ 67. "Pursuant to that policy, DOJ issued a flurry of civil administrative subpoenas to healthcare institutions" in July 2025. Tr. 5:12-13. The subpoenas sought, among other things, identifying and sensitive health information of transgender patients who had received gender-affirming medical care as minors. Compl. ¶¶ 71, 77.

Courts quashed or significantly limited the subpoenas. *Id.* ¶ 73; Tr. 5:12-20. "[T]hese courts found, among other things, that the subpoenas were pretextual; that they were … a smoke screen for the government's true objective of pressuring pediatric hospitals into ending gender-affirming care through commencing vague, suspicionless investigations." Tr. 5:14-19; Compl. ¶¶ 73-88 (documenting cases); *see also*, *e.g.*, *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026).

"[U]ndeterred by its disastrous showing in the courts, DOJ decided to issue nearly identical document requests in the form of grand jury subpoenas emanating from the Northern District of Texas." Tr. 5:21-24. On May 7, 2026, NYU received one of these grand jury subpoenas. Dkt. 1, Ex. A. The grand jury subpoena was "nearly identical" to an administrative subpoena it had received in July 2025 demanding the same documents. Tr. 5:21-24, 8:6-11; *compare* Dkt. 1, Ex. A, *with* Dkt. 45-1. The subpoena commanded production of seventeen broad categories of

records, including "[d]ocuments sufficient to identify each patient who underwent Sex-Rejecting Procedures" from January 2020 to June 2026. Compl. ¶¶ 100-01. "[T]he scope of information sought by the government here … includes medical assessments, diagnoses, informed consent records, and revelation of plaintiffs' transgender status," Tr. 20:24-21:2, not only related to gender dysphoria but also "totally unrelated" information like "family history." Coe Decl. ¶ 17; Koe Decl. ¶ 12; Noe Decl. ¶ 14; Roe Decl. ¶ 14; Doe Decl. ¶ 15.

On May 11, 2026, after NYU posted notice of the subpoena, families learned that their children's identifying and sensitive health information might be imminently produced to DOJ. Dkt. 1, Ex. B. Shortly thereafter, it was publicly revealed Mount Sinai had received a similar subpoena. Dkt. 52 at 2 n.1.

On June 2, to protect their identifying and sensitive health information from being obtained by a government hostile to their very existence, Plaintiffs sued in the district where they reside, where the records demanded were generated and are held, seeking emergency relief and provisional class certification. Dkts. 1, 8. After briefing and argument, the District Court granted a temporary restraining order (TRO) and provisionally certified a class. Dkts. 65, 77. The parties agreed to treat the TRO briefing as a request for a preliminary injunction, Dkts. 66, 67, which the District Court granted, Dkt. 71. DOJ sought a stay pending appeal, Dkt. 81, which the District Court denied, Dkt. 83.

- 4 -

## ARGUMENT

### I.      Defendants Are Not Likely to Succeed on Appeal.

DOJ has failed to make the "strong showing that [it] is likely to succeed on the merits" necessary for a stay pending appeal. *Nken*, 556 U.S. at 434.

#### A.      Plaintiffs Have Standing.

Plaintiffs satisfy all the elements (injury, causation, and redressability) for Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Contrary to DOJ's accusations, Plaintiffs are not challenging "hypothetical future investigations" or all "future process." Mot. 15. Plaintiffs seek limited relief from the imminent disclosure of their identifying and sensitive health information to the government, based on its *current* investigations into claimed healthcare offenses related to gender-affirming medical care. DOJ has repeatedly demanded this information through multiple mechanisms, including administrative and grand jury subpoenas. At the TRO hearing, the NYU Defendants informed the District Court that they were prepared to begin disclosure of patient information the next day, absent court intervention.[2] Mount Sinai hospital also publicly confirmed that it was "subpoenaed by the federal government to share some of our patients' records" and

---

[2] The District Court noted the NYU subpoena's return date to emphasize the urgency of relief, not to suggest the injury was limited to a single subpoena. Tr. 18:23-25.

- 5 -

was prepared to do so. Dkt. 52 at 2 n.1. These imminent injuries are redressable through clarification and vindication of Plaintiffs' constitutional rights.

### B. The District Court Properly Exercised Jurisdiction.

DOJ's motion largely ignores the relevant legal standards. Under this Court's precedent, the fact of a grand jury proceeding in another jurisdiction does not divest a court of the power to entertain an action seeking to clarify a party's constitutional rights under the Declaratory Judgment Act (DJA). *See New York Times Co. v. Gonzales*, 459 F.3d 160, 166 (2d Cir. 2006). Applying *Gonzales*, the District Court assumed jurisdiction over the plaintiffs' claims and appropriately exercised its equitable authority to maintain the *status quo* during the pendency of the litigation. This Court reviews a district court's "decision to entertain such an action for abuse of discretion." *Id*.

Under the DJA, the first question is whether there is "a special statutory proceeding precluding a declaratory judgment action." *Id.* There is not. This Court has already held that Federal Rule of Criminal Procedure 17 does not "render[] declaratory relief inappropriate" even where a grand jury investigation is ongoing in another jurisdiction. *Id.*; *cf. Doe v. Harris*, 696 F.2d 109, 114 (D.C. Cir. 1982) (plaintiff could seek declaratory relief regarding subpoenas to third-party and future subpoenas by any U.S. Attorney's Office).

- 6 -

DOJ incorrectly argues that *Gonzales*'s analysis was "specific to declaratory judgments." Mot. 12. But neither this Court's nor the district court's analysis in *Gonzales* was so confined.[3] There, the parties had "agreed to maintain the status quo with respect to the records sought" for the duration of the briefing on the dispositive motions, obviating the need for emergency relief. *New York Times Co. v. Gonzales*, 382 F.Supp.2d 457, 465 (S.D.N.Y. 2005). But even if *Gonzales* did limit ultimate relief to a declaratory judgment, that would not abrogate the court's equitable power to maintain the *status quo* pending resolution of the underlying claims. *See Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981).

DOJ also incorrectly argues that Rule 17 limits the court's equitable authority to issue relief against federal officials. Mot. 12-13. But "[t]he ability to sue to enjoin unconstitutional actions by … federal officers … reflects a long history of judicial review of illegal executive action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The availability of such equitable remedies remains unless Congress has demonstrated an "intent to foreclose" such relief. *Id.* at 327. Here, "[t]here is good reason to doubt that Rule 17 precludes the equitable relief plaintiffs seek" given that "the remedy provided by Rule 17 lacks a close relationship to any

---

[3] While the district court in *Gonzales* noted that a declaratory judgment is not tantamount to a *permanent* injunction, that factual statement was specific to the question of establishing an evidentiary privilege and related to the question of final relief, not the temporary maintenance of the *status quo*.

particular substantive rule of federal law." *Z.A. v. Blanche*, 2026 WL 1907181, at *14, *16 (N.D. Cal. July 2, 2026).

The district court did not abuse its discretion in balancing the relevant factors impacting jurisdiction under the DJA. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003); *Gonzales*, 459 F.3d at 167. In *Gonzales*, DOJ unsuccessfully argued that a New York court's exercise of jurisdiction "would unreasonably encroach upon the authority of the district court under whose auspices the subpoenas are issued," Defs.' Br., *Gonzales*, 2005 WL 1266200 (S.D.N.Y. Jan. 3, 2005), and "lead to wide-scale disruption of grand jury investigations," *Gonzales*, 382 F.Supp.2d at 480. Those arguments were insufficient to divest the court of jurisdiction in *Gonzales* and are similarly insufficient here.

The remainder of DOJ's arguments, Mot. 7-12, boil down to a suggestion that a motion to quash in Texas would be a "better or more effective remedy" under *Dow Jones*. *Gonzales*, 459 F.3d at 167. It would not. Plaintiffs received medical treatment at multiple healthcare institutions in New York City, *e.g.*, Compl. ¶17, and DOJ refuses to confirm whether such institutions have received, been threatened with, or complied with subpoenas, and whether such subpoenas (like the one to Mount Sinai) are administrative or grand jury, *Gonzales*, 459 F.3d at 167 (quashal "would not offer ... the same relief" because of, *e.g.*, uncertainty about existence of subpoenas, compliance status, and acts of "third party" in district). A motion to quash in the

Northern District of Texas "would not have any effect on other grand jury or civil administrative subpoenas seeking the same information from NYU and other healthcare institutions in New York City, especially when … plaintiffs have no way of learning of the existence of any subpoena." Tr. 17:12-18; *see also Z.A.*, 2026 WL 1907181, at *15. Plaintiffs do not seek to "end-run" around a foreclosed remedy by broadening it, as DOJ contends, Mot. 13-14. Rather, Plaintiffs seek relief from inexplicable and unusual demands for the same information, from the same institutions, through multiple mechanisms. To the extent what is sought is anomalous, it is only because DOJ's actions are.

DOJ's argument that Federal Rule of Criminal Procedure 6(e) divests the District Court of jurisdiction is wrong. Mot. 10-11. First, those very same arguments were deemed an insufficient basis for divesting the district court of jurisdiction in *Gonzales*. *See* Defs.' Br., *Gonzales*, 2005 WL 1266200. Second, Plaintiffs are non-recipients of subpoenas demanding their sensitive information and seek relief where they reside, received medical care, the subject records are held, and the investigation began. This is not a collateral attack on a single Texas proceeding, but a response to the government's multi-pronged, recurrent, and unprecedented campaign to seize lists of young transgender patients and their highly sensitive medical records *en masse*. If successful, DOJ's attempt to use grand jury secrecy as both a sword and a shield would leave the patients with no recourse. Finally, though DOJ overstates its

- 9 -

inability to convey the need for the demanded patient information, that constraint does not divest the court of jurisdiction given that the District Court applied the most deferential standard to the government and still concluded it could not "conceive of a crime that would require the breadth of disclosure sought in the subpoena." Tr. 22:12-17.

Ultimately, the case for jurisdiction here is even clearer than in *Gonzales*. In *Gonzales*, the Illinois grand jury investigation was longstanding and the New York Times was aware of both the location and contours of that investigation. *Gonzales*, 382 F.Supp.2d at 466-69. By contrast here, DOJ suddenly and without explanation changed the forum of its investigation "in favor of" what one district court characterized as "a distant forum that DOJ deems friendly to its political positions." *In re: Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, 2026 WL 1392565, at *1 (D.R.I. May 14, 2026). Prior to the unexplained change of venue, the locus of the purported investigations was Washington, D.C., along with the various jurisdictions where target hospitals are located. [4] *Id*. at *3; Defs.' Br., *Z.A. v. Lucile*

---

[4] At common law, grand juries were "sworn to enquire, only for the body of the county, *pro corpore comitatus*; and therefore they [could not] regularly enquire of a fact done out of that county for which they [were] sworn." *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017); *see also* Justice Manual § 9-11.121 ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district.").

*Salter Packard Child.'s Hosp.*, No. 26-cv-04998 (N.D. Cal. Jun 03, 2026) (ECF 31), at 3-6.[5]

If DOJ's "heads we win, tails you lose" approach to demanding patients' identities and records, hiding those demands, and then preventing judicial review is successful, it will mean that "protecting plaintiffs' constitutional rights in this environment is worse than a game of whack-a-mole; it's being forced to play the game blindfolded. And this is precisely the factual scenario for which the *Gonzales* case was designed." Tr. 7:10-15.

### C. Plaintiffs Are Likely to Succeed on Their Fifth Amendment Informational Privacy Claim.

DOJ's serial subpoenas seek to collect and compel the disclosure of information that is "among the most personal and sensitive a medical provider can hold and squarely within the class of intimate material, warranting the strongest constitutional protection." Tr. 21:3-6.

DOJ does not, and cannot, dispute that this Court has deemed this information constitutionally protected. The right to informational privacy protects "medical information," of which the "interest in maintaining … confidential[ity] is not just

---

[5] DOJ relies on *American Academy of Pediatrics v. Uthmeier*, 180 F.4th 1022 (7th Cir. 2026) (en banc), and *World Professional Ass'n for Transgender Health v. FTC*, 2026 WL 1999008 (D.D.C. July 10, 2026), but both of those cases involved separate judicial proceedings involving the same parties. There are no such proceedings here.

- 11 -

presumptively reasonable, it is fundamental." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 67 (2d Cir. 2018); *see also O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005). It also protects information relating to one's transgender status, which is "excruciatingly private." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999).

The District Court therefore properly focused on whether Plaintiffs' "interest in privacy outweighs the government's interest in breaching it." Tr. 19:23-24 (quoting *Hancock*, 882 F.3d at 65). Where, as here, "the government is acting in an executive capacity, courts consider whether the action was so arbitrary as to shock the conscience," *id.* at 19:25-20:2 (citing *Hancock*; *O'Connor*), which requires "examin[ing] the Executive Branch's interest in breaching that privacy"—"the stronger the individual interest, the more compelling the government actor's reasons must be," *id.* at 20:7-11 (quoting *Hancock*, 882 F.3d at 68).

DOJ complains about recognizing the right to informational privacy within the grand jury subpoena context. Mot. 15-17. But "plaintiffs do not seek to quash a particular grand jury subpoena." *Z.A.*, 2026 WL 1907181, at *15. Rather, Plaintiffs "challenge DOJ's broader campaign" to attain their identifying and sensitive health information, including through administrative and grand jury subpoenas. *Id.* "Given DOJ's persistence in pursuing transgender minors' patient data, there is little reason to think that the grand jury subpoena will be DOJ's last such effort." *Id.*

Regardless, DOJ may not use a grand jury subpoena as "some talisman that dissolves all constitutional protections." *United States v. Dionisio*, 410 U.S. 1, 11 (1973). Indeed, "grand juries must operate within the limits of … the Fifth [Amendment]." *Gonzales*, 459 F.3d at 172 (quotation omitted). When a grand jury subpoena infringes a constitutionally protected interest, a preliminary showing can be warranted before allowing its enforcement. *See In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 244 (2d Cir. 1986) (en banc).

Turning to the balancing test required by *Hancock* and *O'Connor*, each of the relevant factors weighs strongly in favor of protecting transgender adolescent patients' identities and sensitive health information. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980).

DOJ does not dispute the District Court's conclusion that the information it seeks is "among the most personal and sensitive a medical provider can hold and squarely within the class of intimate material, warranting the strongest constitutional protection." Tr. 21:3-6. "These records … often involve intimate disclosures about discomfort with specific body parts, sexual history, past trauma, interfamily dynamics, use of self-harm or other negative coping mechanisms … such as disordered eating, and experiences of harassment and bullying," as well as "the diagnoses, clinical reasoning, and informed-consent discussions underlying

- 13 -

treatment decisions." *In re: Subpoena No. 25-1431-014*, 810 F.Supp.3d 555, 595, 597 (E.D. Pa. 2025); *see also* Tr. 20:24-21:8. Indeed, DOJ "acknowledged" that Plaintiffs "have an objectively reasonable expectation of privacy in the sensitive medical records that the government's subpoena seeks." *Id.* at 24:19-24.

DOJ also does not dispute that disclosure to the government of Plaintiffs' identifying and sensitive health information "would risk all manner of irreparable harm, including by inflicting deep emotional harm, destroying trust in medical care, and spreading damage to families, peers, and others." Tr. 28:3-9. DOJ's only response is that it could return any records disclosed. Mot. 25. But DOJ does not dispute "the absence of adequate safeguards to prevent further disclosure of plaintiffs' private information." Tr. 21:11-13. While DOJ alludes to grand jury secrecy, "[i]t is of little solace to transgender minors that the only officials with access to their medical records are those working to terminate gender-affirming care based on clear hostility to 'transgenderism' (i.e., the existence of transgender people)." *Z.A.*, 2026 WL 1907181, at *20. Moreover, Rule 6(e) "contains numerous exceptions permitting [i]nter and intra governmental dissemination of this information," Tr. 21:14-16, which could allow "disclosure of provisional class members' health information to a large number of Texas officials." *Z.A.*, 2026 WL 1907181, at *20.

Further, that DOJ may *sometimes* obtain access to *some* medical records in the context of its investigations does not justify its attempts to seek Plaintiffs' identifying and sensitive health information here.[6] "[T]he context surrounding th[e grand jury] subpoena [here], including the various statements made by executive officers, the recent spate of similar and failed administrative subpoenas, [and] the timeline that is before [the court], leaves [the court] at pains to understand the precise nature of the government's interest and how any legitimate government interest would be served by the disclosure now sought." Tr. 22:5-11. The District Court did not abuse its discretion in making this finding, particularly given "DOJ's efforts … to recast discredited civil administrative subpoenas as grand jury subpoenas from a hand-picked faraway jurisdiction in order to minimize judicial review of constitutional infirmities." *Id.* at 8:6-11.

DOJ's motion tied the subpoena to its investigations of purported healthcare offenses under the FDCA and billing practices. Mot. 1. But "it is utterly unclear …

---

[6] The cases DOJ cites are distinguishable: In *United States v. Beaufils*, 160 F.4th 1147 (11th Cir. 2025), the records were limited in time (one year) and in nature (a single telehealth provider) and did not target a particular patient population; in *In re Subpoena Duces Tecum*, 228 F.3d 341, 350-51 (4th Cir. 2000), the government had offered the *administrative* subpoena recipient could "retain patient files and claim-processing files," *id.* at 351, and the court emphasized "[t]he value of constraining governmental power … in the judicial supervision of subpoenas," *id.* at 349; and *United States v. Hayes*, 794 F.2d 1348 (9th Cir. 1986), involved a search *warrant*, following a probable cause finding, that "limited [the government's] seizure to documents dealing with the distribution of controlled substances," *id.* at 1356.

why the … production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms" are necessary for such investigations. *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *see also In re: Subpoena No. 25-1431-014*, 810 F.Supp.3d at 604. And DOJ has disclaimed the need for this information in some cases. *See, e.g.*, Settlement Agreement, *In re Children's Hosp. of L.A. Subpoena*, No. 25-CV-11183, (C.D. Cal. Jan. 22, 2026) (ECF 25-1). In others, "DOJ had represented that anonymized data without patient-identifying information would be sufficient for purposes of those investigations." Tr. 10:14-16; *see also*, *e.g.*, Dkt. 15-4, at 124:23-125:2.

Finally, DOJ asserts no lawful public policy or recognizable public interest militating towards disclosure of this information other than a generalized interest against burdening grand jury investigations. "But … this policy does not authorize 'fishing expeditions' or demands for records for which there is not a reasonable possibility of relevance to the existence of an indictable offense." *Z.A.*, 2026 WL 1907181, at *23. DOJ's serial demands here are part of the Administration's efforts "to identify, to demonize, and ultimately to eradicate an entire population of transgender people," Tr. 5:7-11, and to "terminate" gender-affirming medical care. *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8. These purposes are neither legitimate nor sufficient to justify the intrusion on Plaintiffs' privacy rights.

- 16 -

### D. Plaintiffs Are Likely to Succeed on Their Fourth Amendment Claim.

Contra DOJ's characterization, the District Court did not rule that the Fourth Amendment "prohibit[s] subpoenas for medical records." Mot. 20. Nor did it liken *all* medical records "to the cell-site location records at issue in *Carpenter v. United States*, 585 U.S. 296 (2018)." Mot. 20-21. Rather, it applied the settled principle that "a *subpoena duces tecum* may constitute a search forbidden by the Fourth Amendment … if its terms [are] 'unreasonable,'" *In re Horowitz*, 482 F.2d 72, 75 (2d Cir. 1973) (quotation omitted), and found "*Carpenter*'s reasoning directly applicable to the unique circumstances here." Tr. 26:14-16. Applying a "contextualized reasonableness analysis," balancing "the intrusion on privacy caused by law enforcement against the justification asserted for it," *id.* 24:1-4, the District Court correctly concluded that DOJ's demands for plaintiffs' identifying and sensitive health information "constitute[] an unjustifiable intrusion into their reasonable expectation of privacy under the Fourth Amendment." *Id.* 24:15-19.

Following the TRO, the Supreme Court reaffirmed in *Chatrie v. United States*, No. 25-112, 609 U.S. --, 2026 WL 1855568 (U.S. June 29, 2026), that "the Fourth Amendment protects people, not places," "secur[es] the 'privacies of life' against the exercise of 'arbitrary power,'" and protects "Americans' long-held conviction that no government official should have free access to the most closely kept aspects of their lives." *Id.* at *8-9 (quotations omitted).

- 17 -

Although both *Chatrie* and *Carpenter* "confronted the challenge of adhering to those principles in the face of new technologies," *id.* at *9, their analyses were not limited to such advancements. Rather, a primary "axis" making protected information "qualitatively different" is that its "nature" is "incomparably 'revealing,'" as compared to the "limited types of personal information" implicated by information like "telephone numbers and bank records." *Id.* at *15 (citations omitted). Both cases highlight the invasiveness of tracking visits to "indisputably private" *medical* locations, including "the psychiatrist, the plastic surgeon, the abortion clinic, [and] the AIDS treatment center." *Id.* at *12. The *Chatrie* court rejected the argument that "[a] single stop at a doctor's office" would "reveal[] little about the details of [someone's] personal life," *id.*, because even such "short-term monitoring" can reveal "a wealth of detail about [their] familial, political, professional, religious, and sexual associations." *Id.* (citation omitted).

Here, DOJ seeks "six years of aggregated treatment history, diagnoses, family information, and intimate personal detail," Tr. 26:17-20—"information that would allow the government to compile a sweeping profile of plaintiffs." *Id.* 27:1-3. As in *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), DOJ's "primary purpose" in seeking these records "is to generate evidence for law enforcement purposes." Tr. 25:6-13. A failure to enjoin DOJ would allow it "to obtain and disclose the most intimate details about plaintiffs' medical histories and personal

- 18 -

lives," *id*. 28:3-5, which DOJ "offer[s] … few assurances … would not be used to harm plaintiffs," including potential prosecutions of "parents of the patients" or even "minor plaintiffs … themselves." *Id*. 28:20-29:2.

DOJ's attempts to distinguish cell-site and geofence location data, Mot. 23, and argument that "medical and billing records" are used in generic "healthcare-related prosecutions," *id.* at 19, are unavailing. Under their theory, the Constitution would protect Plaintiffs if DOJ had sought a geofence warrant capturing every visit to a particular provider but offers zero protection from the equivalent of recording all doctor-patient communications at that office over the course of six years. The District Court correctly determined that Plaintiffs' "objectively reasonable expectation of privacy," Tr. 24:19-22, in the information covering "a period of six years, which for many of the minor plaintiffs represents a substantial percentage of their lives," *id*. 4:24-5:1, outweighs DOJ's complete failure to articulate "how any legitimate government interest would be served by the disclosure," *id.* 22:9-11.

## II. Movants Will Not Be Irreparably Harmed While Their Appeal Is Pending.

Independent of the merits inquiry, DOJ is not entitled to a stay because leaving the preliminary injunction in place poses no irreparable harm to the government. "If the moving party has not demonstrated irreparable harm, then this Court can avoid delving into the merits." *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring); *Murthy v. Missouri*, 144 S. Ct.

7, 8 (2023) (Alito, J., dissenting). "Simply showing some possibility of irreparable injury fails to satisfy [this] factor." *Nken*, 556 U.S. at 434-35 (citation omitted).

Indeed, DOJ has repeatedly undermined any claim of urgency that would demonstrate irreparable harm absent a stay: in addition to disclaiming its need for identical records in related cases, *see supra* I.C., DOJ "took no action to enforce" the administrative subpoena to NYU or "to compel disclosure … through other means" for "nine months," Order Denying Stay, *Z.A. v. Blanche*, No. 26-cv-04998 (N.D. Cal. July 31, 2026) (ECF 108), at 3. And once this case was filed, DOJ voluntarily stipulated to an adjournment of deadlines to produce contested documents; waited ten days after the injunction issued before seeking a stay from the District Court; proposed a 14-day briefing schedule for stay proceedings there; and, after the District Court's denial, waited an additional week before seeking relief from this Court. Dkts. 21, 81-82.

Far from "indefinitely prohibiting the government from obtaining patient records through *any* grand jury process to investigate *any* crime," Mot. at 24, the preliminary injunction specifically protects *these* Plaintiffs' privacy interests in the context of DOJ's targeting of transgender people and gender-affirming medical care through both administrative and grand jury subpoenas. DOJ remains free to seek records in furtherance of legitimate investigations pursuant to proper exercises of its statutory authority, but the government is not harmed when prevented from

- 20 -

abusing its authority to pursue its preferred policies at the expense of constitutional rights. *See New York v. DHS*, 969 F.3d 42, 87 (2d Cir. 2020).

The District Court is not supervising "all Executive Branch activity," *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th Cir. 2026), but instead appropriately establishing constitutional limits on DOJ's efforts to obtain deeply private personal information, *see Schuette v. BAMN*, 572 U.S. 291, 311-13 (2014) ("[T]he Constitution requires redress by the courts" to safeguard "the right of the individual not to be injured by the unlawful exercise of governmental power."). At most DOJ suggests a mere "possibility of irreparable injury," *Nken*, 556 U.S. at 434, which is insufficient to disrupt the *status quo ante litem*, let alone pending appeal.

## III. The Equities and the Public Interest Favor Denying a Stay.

By contrast to the speculative harm to the government, the harm to Plaintiffs from disclosure of their identifying and sensitive health information would be irreparable. Tr. 28:1-29:5. "Such disclosure … cannot be undone." *Z.A.*, 2026 WL 1907181, at *23; *cf. In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Once information is published, it cannot be made secret again."). Once Plaintiffs' records and information are provided, the harm will have occurred and Plaintiffs will be denied any possibility of full relief; Plaintiffs' sensitive information—their transgender status, medical treatments, and conversations with doctors—will already have been divulged to the federal government, *see* Tr. 4:12-5:4, which could

- 21 -

share it with state entities who pose a particular threat to those youth and families, *see supra* pp. 14-15.

These definitionally irreparable harms cannot be cured by simply "return[ing]" the records. Mot. 25. Following disclosure, "it is … too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occur[s]." *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). Moreover, these disclosures "inflict[] deep emotional harm, destroy[] trust in medical care, and spread[] damage to families, peers, and others." Tr. 28:6-9; *see*, *e.g.*, Coe Decl. ¶¶ 12, 20; Boe Decl. ¶19. Furthermore, the infringement of constitutional rights is itself irreparable harm. *See A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021).

The balance of the equities and the public interest also favor leaving the preliminary injunction in place. "No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request.

If the Court is prepared to issue a stay, Plaintiffs respectfully request that it hold that stay in abeyance while they seek immediate review, considering the

- 23 -

irreversible nature of disclosure and to preserve any court's jurisdiction to order further relief. *See Hassoun v. Searls*, 976 F.3d 121, 126 (2d Cir. 2020).

Dated this 3rd day of August 2026.

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

Robert Hodgson
Gabriella Larios
Anya Weinstock
**New York Civil Liberties Union
Foundation**
125 Broad Street, 19th Floor
New York, New York 10004
Telephone: 212-607-3300
rhodgson@nyclu.org
glarios@nyclu.org
aweinstock@nyclu.org

Chase B. Strangio
Shana Knizhnik
**American Civil Liberties Union
Foundation**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
cstrangio@aclu.org
sknizhnik@aclu.org

Adrienne Spiegel
**American Civil Liberties Union
Foundation**
425 California Street, Suite 700
San Francisco, California 94104
Telephone: 415-343-0779
a.spiegel@aclu.org

Omar Gonzalez-Pagan
Karen L. Loewy
**Lambda Legal Defense
and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org
kloewy@lambdalegal.org

Nora Huppert
**Lambda Legal Defense
and Education Fund, Inc.**
3656 N. Halsted St.
Chicago, Illinois 60613
Telephone: 312-605-3233
Facsimile: 855-535-2236
nhuppert@lambdalegal.org

A.D. Sean Lewis*
**Lambda Legal Defense
and Education Fund, Inc.**
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
alewis@lambdalegal.org

* *Application for admission forthcoming.*

*Counsel for Plaintiffs-Appellees*

- 24 -

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,198 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

Date: August 3, 2026

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan