UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Carter Coe, et al.,

> Plaintiffs-Appellees,

> v.

Todd Blanche, et al.,

> Defendants-Appellants.

Docket No. 26-1886

**Defendants-Appellants' Reply in Support of
Motion for a Stay Pending Appeal**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT........................................................................................2

I.    The Injunction Is Indefensible............................................................2

    A.   Plaintiffs are using the wrong procedural vehicle in the
    wrong court. ...................................................................................3

    B.   The district court grossly misapplied substantive due process
    principles.........................................................................................6

    C.   The Fourth Amendment does not prohibit subpoenas for medical
    records.............................................................................................9

II.    The Remaining Considerations Favor the Government. ................... 10

CONCLUSION.................................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)..............................................................................4

*Carpenter v. United States*,
  585 U.S. 296 (2018) ........................................................................... 10

*Chatrie v. United States*,
  609 U.S. \_\_, 2026 WL 1855568 (June 29, 2026)................................... 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..............................................................................3

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022)...............................................................................7

*Ferguson v. City of Charleston*,
  32 U.S. 67 (2001) ............................................................................... 10

*Hilao v. Est. of Marcos*,
  95 F.3d 848 (9th Cir. 1996)....................................................................4

*In re 2025 Subpoena to Children's Nat'l Hosp.*,
  2026 WL 160792 (D. Md. Jan. 21, 2026)........................................... 7, 8

*In re Grand Jury Proceedings*,
  801 F.2d 1164 (9th Cir. 1986)................................................................5

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993).....................................................................4

*In re Subpoena Duces Tecum*,
  228 F.3d 341 (4th Cir. 2000) ............................................................... 12

*Kerns v. Bader*,
  663 F.3d 1173 (10th Cir. 2011).............................................................. 10

*Margolin v. Nat'l Ass'n of Imm. Judges*,
  146 S. Ct. 1285 (2026)...........................................................................5

*New York Times Co. v. Gonzales,*
 459 F.3d 160 (2d Cir. 2006)........................................................................3

*United States v. R. Enters., Inc.,*
 498 U.S. 292 (1991).................................................................... 12

*United States v. Calandra,*
 414 U.S. 338 (1974) ............................................................2, 6, 12

*United States v. James,*
 151 F.4th 28 (2d Cir. 2025) .....................................................8

*United States v. McGovern,*
 60 F.2d 880 (2d Cir. 1932).......................................................6

## Rules

Fed. R. Crim. P. 6 ...............................................................................3

Fed. R. Crim. P. 17..............................................................................3

iii

## INTRODUCTION

The Department of Justice is investigating, among other things, billing fraud in the provision of gender-related medical interventions for minors. The district court barred the government from obtaining medical and billing records pertaining to those procedures through any subpoena (including grand jury subpoenas), on the theory that the records could not possibly be relevant to any federal offense. That is plainly untenable.

At the outset, any motions to quash grand jury process are properly entertained only by the court that issued the grand jury process. Plaintiffs do not improve on the district court's reasoning, which would contravene the express terms of Criminal Rule 17 and invite each district court to supervise and interfere with grand jury proceedings operating under the auspices of its sister courts. That is not how the federal judiciary was designed to work. Instead, district courts supervise their own grand juries, and courts of appeals supervise district courts within their jurisdiction.

The resulting injunction prohibits the Department from issuing grand jury or administrative subpoenas. Such an order is unknown to American legal history: Plaintiffs cite no remotely comparable order—with the exception of another order issued within a few days of the district court's order.

The district court's order is equally novel on the merits. Plaintiffs do nothing to rehabilitate the district court's new recognition of a substantive due process right to privacy in medical information sought through grand jury process—a purported right that lacks any basis in history or tradition and is flatly inconsistent with the Supreme Court's rejection of a "right of privacy before the grand jury." *United States v. Calandra*, 414 U.S. 338, 353 (1974). And plaintiffs fare no better in rehashing the district court's novel Fourth Amendment analysis.

The district court's unwarranted intrusion into the Executive Branch's authority to execute the laws, including through criminal law enforcement, works irreparable harm each day it remains in effect. The Court should promptly grant a stay pending appeal.

## ARGUMENT

The government is entitled to a stay pending appeal. It is likely to succeed on the merits, and the non-merits factors tip in its favor.

## I.     The Injunction Is Indefensible.

The government will prevail on appeal because the unprecedented injunction exceeds the district court's equitable authority and is erroneous on its own terms.

2

### A. Plaintiffs are using the wrong procedural vehicle in the wrong court.

As the government has explained, Mot. 7-15, the Federal Rules of Criminal Procedure establish a comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas. *See* Fed. R. Crim. P. 17; *see also id.* R. 6. District courts do not possess freestanding equitable authority to entertain collateral attacks on, or to enjoin, a sister court's grand jury process. Plaintiffs sought and obtained an order that functions just like quashal of a sister federal court's grand jury process, and the government is likely to show that the district court exceeded its authority. Indeed, Plaintiffs say "the NYU subpoena's return date" was the reason for "the urgency of" the proceedings below (at 5 n.2), which undermines their argument (at 8-9) that their real need is for relief from unknown other subpoenas to unknown other institutions as part of unknown other investigations. *But see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013).

Plaintiffs say the district court properly granted a *preliminary injunction* because *New York Times v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), permits *declaratory judgments* "even where a grand jury investigation is ongoing in another jurisdiction." Opp. 6. As the government explained already, that does not follow. Mot. 11-13. Indeed, Plaintiffs'

3

recognition that there was no "emergency relief" at issue in *Times*, Opp. 7, underscores why that decision does not bless the district court's coercive order blocking compliance with any grand jury or other subpoenas on pain of contempt and does not bear the weight Plaintiffs attempt to place on it. And contrary to Plaintiffs' view, Opp. 8, the district court here did not opine on the factors governing the appropriateness of a declaratory judgment— presumably because the district court did not enter a declaratory judgment. Nor would Plaintiffs' invocation of the Declaratory Judgment Act do them any good regardless: The Act is neither a source of jurisdiction nor a cause of action on its own. *See, e.g.*, *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).

Plaintiffs say Rule 17's instructions are irrelevant because they have an equitable workaround, relying on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). But (setting aside that Plaintiffs did not make this argument below) *Armstrong* itself explained that a court's power to enjoin unconstitutional conduct by federal officers is "subject to express and implied statutory limitations." *Id.* at 327. "[T]he Federal Rules have the force of statute," *Hilao v. Est. of Marcos*, 95 F.3d 848, 852 (9th Cir. 1996), and Rule 17 "express[ly] provi[des]," *Armstrong*, 575 U.S. at 328, that challenges to extant grand jury process take the form of a motion to

4

quash presented to the supervising court. And, as discussed already, the unique features of grand jury investigations (including secrecy, centralized supervision, and nationwide service of process) make collateral adjudication "judicially unadministrable." *Id.*

Last, this case itself shows the incorrectness of Plaintiffs' suggestion that any court can hear a challenge to any grand jury subpoena, so long as the reviewing court applies its own imagination to hypothesize about how the evidence might be relevant to possible federal crimes. The district court claimed to apply its imagination to the task but could not think of a connection between medical records (showing diagnoses and associated treatments) and billing records (showing how those treatments were documented to insurers), on the one hand, and, on the other, a publicly announced investigation regarding billing fraud and other federal crimes. Tr. 22. Nor will the connection always be so obvious. That is why our legal system is founded on the principle that parties raise arguments to courts, *see, e.g.*, *Margolin v. Nat'l Ass'n of Imm. Judges*, 146 S. Ct. 1285 (2026), and that is why it is important for litigation regarding grand jury subpoenas to occur in a forum consistent with the time-honored strictures of grand jury secrecy.

Last, Plaintiffs' unexplained claim that the government is attempting to "prevent[] judicial review," Opp. 11, carries no weight. The government has explained that efforts to seek review of a grand jury subpoena must occur in the court that issued the subpoena, not that grand jury subpoenas are unreviewable. No one is deprived of judicial review simply by being unable to file a collateral attack in a preferred forum.

### B. The district court grossly misapplied substantive due process principles.

The government is also likely to succeed in arguing that the district court badly erred in holding that Plaintiffs have a substantive due process right to privacy before the grand jury. *See United States v. Calandra*, 414 U.S. 338, 353 (1974) (a witness "of course" has "no right of privacy before the grand jury"); *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) ("There is no general right to privacy before the grand jury."); *United States v. McGovern*, 60 F.2d 880, 889 (2d Cir. 1932). Plaintiffs still cite no case that has recognized a substantive due process right to informational privacy in the grand jury context. *See* Mot. 15-20. And any such right in the grand jury context would have to have emerged long ago. The scenario is nothing new: Grand juries have long conducted inquiries that involve "embarrassing" topics and require "an unwelcome disclosure of … personal affairs." *Calandra*, 414 U.S. at 353. And substantive due process

6

requires a long history and tradition protecting the asserted, specifically defined right. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 250, 256 (2022). But Plaintiffs cite no such history or tradition.

Plaintiffs also fail to effectively defend the district court's wholly insufficient analysis. The linchpin of the district court's reasoning was the conclusion that patient medical and billing records could not conceivably be relevant to any federal criminal offense. Tr. 22. Plaintiffs do not mention or defend that conclusion—presumably because patient medical and billing records have obvious relevance to many federal crimes. Mot. 18-19. Plaintiffs say a few examples of these materials' utility are "distinguishable" for various procedural reasons, but the examples' procedural postures are irrelevant because the point is instead a substantive one: Medical and billing records are frequently relevant to—indeed, indispensable for— proving violations of various federal criminal laws. Plaintiffs do not and cannot defend the district court's contrary reasoning.

Instead, Plaintiffs quote a *different* district court. Opp. 15-16 (quoting *In re 2025 Subpoena to Children's Nat'l Hosp.*, 2026 WL 160792 (D. Md. Jan. 21, 2026)). Even if Plaintiffs could somehow substitute a different district court's reasoning for the reasoning of the court below, it would do them no good. The line they selectively quote considered only whether the

7

records could be relevant to whether a hospital violated the Food, Drug and Cosmetic Act by "misbranding or distributing drugs." *In re 2025 Subpoena to Children's Nat'l Hosp.*, 2026 WL 160792, at \*8 (considering an administrative subpoena). Even if that court's reasoning were correct as to such a subpoena (and it is not, as the government has explained on appeal, *see Parent AA v. Dep't of Justice*, No. 26-1104 (4th Cir.)), it is no help to plaintiffs, who in this case must defend a far broader remedy that inescapably rests on the premise that patient medical and billing records are not relevant to ascertaining or prosecuting *any* violations of federal law. Plaintiffs' task is made all the more difficult by the publicly recognized existence of an investigation into, among other things, billing fraud, which often involves matching and cross-referencing the bills submitted for a patient against the diagnoses and services actually provided to that patient. *See, e.g., United States v. James*, 151 F.4th 28, 35-36 (2d Cir. 2025) (health care fraud conviction for bills that "add[ed] certain codes to claims forms for more complex procedures than had actually been performed or for procedures that had not been performed at all" and "falsely represented to insurance companies that component[s]" of a single "procedure[] were performed separately").

Plaintiffs also fail to defend the other key prong of the district court's analysis: treating their privacy interests as insurmountable. Plaintiffs do not deny that that approach is wholly incompatible with a functioning law enforcement process, given the frequency with which sensitive personal information is needed for many prosecutions. *See* Mot. 19-20. Plaintiffs are thus unlikely, and the government is likely, to prevail on appeal of the district court's resolution of this substantive due process claim.

### C. The Fourth Amendment does not prohibit subpoenas for medical records.

The government is also likely to succeed on its appeal of the district court's alternative Fourth Amendment holding. Plaintiffs argue that their medical records (but perhaps not *all* medical records) are so sensitive that they cannot be obtained via subpoena. But as the government has explained, patient medical and billing records fall within the classic scope of the third-party doctrine, which applies when information that would otherwise be protected by the Fourth Amendment is voluntarily disclosed to a third party. Mot. 21-22.

Plaintiffs conspicuously do not engage with the fact that they were on notice that their personal medical information would be disclosed for many reasons, including in response to legal process. Mot. 22. And their attempt to generalize the Supreme Court's recent third-party doctrine decisions

9

beyond novel surveillance technologies to all sensitive or otherwise private information would have *Chatrie* and *Carpenter* overrule the third-party doctrine entirely—something both decisions disavowed. *See Carpenter v. United States*, 585 U.S. 296, 316 (2018) ("We do not disturb the application or *Smith* or *Miller* or call into question conventional surveillance techniques and tools."); *Chatrie v. United States*, 146 S. Ct. 2193, 2215 (2026) (framing holding as limited to accessing historical cell phone location information).[1]

*     *     *

Last, Plaintiffs do not attempt any defense of the district court's entry of relief running against NYU Defendants. The Court should thus at minimum grant a stay as to that undefended portion of the injunction. *See* Mot. 20, 23.

## II.    The Remaining Considerations Favor the Government.

The government will be irreparably harmed absent preliminary relief. The district court took the extraordinary step of immunizing hospitals in

---

[1] Plaintiffs briefly (at 18) reference *Ferguson v. City of Charleston*, but understandably do not contend that it is controlling on this issue. 532 U.S. 67 (2001); *see Kerns v. Bader*, 663 F.3d 1173, 1185 (10th Cir. 2011) (Gorsuch, J.) (explaining that *Ferguson* "expressly *left open* whether disclosure of preexisting medical records held by the hospital would also be a search implicating the Fourth Amendment.").

New York City from any grand jury process relevant to the government's investigation. That would install the district court as the superintendent over an asserted grand jury investigation in an entirely different district, and would intolerably delay any such investigation.

Plaintiffs' contrary view is unsustainable. The government has moved with alacrity in this litigation ever since Plaintiffs initiated it on June 2, with briefing on a temporary restraining order complete approximately two weeks after filing, converting the temporary restraining order to a preliminary injunction in order to further expedite proceedings, and subsequent actions to seek relief from the district court's order measured in mere days. Opp. 20.

Plaintiffs' protest (at 20) that the government did not immediately move to enforce a since-withdrawn *administrative* subpoena is irrelevant. It is one thing to engage in an ordinary (and often time-consuming) process of negotiation over an early investigative step like an administrative subpoena; it is entirely different to be indefinitely enjoined from using ordinary investigative process to further an investigation. Likewise, a negotiated agreement for initial production of anonymized records, which expressly left open future demands for patient-identified records, does nothing to undermine the government's arguments in this case. Opp. 20.

11

Plaintiffs' asserted privacy interests do not outweigh the government's strong and legitimate interests in enforcing federal law— interests that "outweigh[] the privacy rights of those whose [medical] records" are sought to further those interests. *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000). A grand jury is entitled to conduct its investigation and receive even evidence that amounts to "an unwelcome disclosure of … personal affairs." *Calandra*, 414 U.S. at 353. "[P]rocedural delays and detours" that interfere with that process are impermissible. *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991). And lacking a workable merits theory, no irreparable harm to Plaintiffs can suffice to sustain the district court's preliminary injunction. That novel, far-reaching order should be promptly stayed.

## CONCLUSION

The Court should grant a stay pending appeal.

Dated:  Washington, D.C.      Respectfully submitted,
August 10, 2026

BRETT A. SHUMATE
*Assistant Attorney General*

JORDAN CAMPBELL
*Deputy Assistant Attorney General*

By:    /s/ *Sarah Welch*

SARAH WELCH
*Senior Counsel to the Assistant*
*Attorney General*
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-3180
Email: sarah.e.welch@usdoj.gov

JOHN R. BAILEY
BRANTLEY T. MAYERS
*Counsel to the Assistant Attorney*
*General*

STEVEN R. SCOTT
EUGENE O'HALLORAN
LUKE A. MILLER
*Trial Attorneys*
*U.S. Department of Justice*
*Civil Division*
*Attorneys for Federal Defendants*

13

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 2,453 words.